HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOUGLAS SHEPHERD, et al.,

        Plaintiffs,

    v.

WELDON MEDIATION SERVICES,
INC., et al.,

        Defendants.

CASE NO. C10-1217RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for attorney fees from Plaintiffs Resident Action Council ("RAC") and Khadija Bin.  Dkt. # 171.  No party requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS the motion, but reduces the fees that Plaintiffs requested.

## II.     BACKGROUND

RAC and various individual tenants instituted this sweeping lawsuit challenging a host of policies of the Seattle Housing Authority ("SHA").  Perhaps the only common thread connection Plaintiffs' various claims was that all of the Plaintiffs were either tenants in housing complexes that SHA owns and operates or, in the case of RAC, an organization representing those tenants.  At its outset in July 2010, Plaintiffs' suit raised a host of challenges to the way SHA conducts statutorily-mandated grievance hearings for its tenants.  Plaintiffs also contended that SHA unlawfully failed to provide translations

ORDER – 1

of a wide range of documents supplied to tenants.  They contended that SHA improperly administered its Tenant Trust Account program, a program designed to help tenants deal with rent increases as a result of changes in their financial status.  They challenged SHA's alleged failure to provide an Earned Income Disallowance, which would also help tenants mitigate the impact of rent increases.  For each aspect of SHA's policy that Plaintiffs challenged, there was at least one individual tenant with a claim arising from that Policy.  Komba Ngauja, for example, alleged that SHA mishandled his Tenant Trust Account.  Patricia Ann challenged SHA's failure to apply the Earned Income Disallowance.  Douglas Shepherd had a dispute over a plumbing repair, and contended that he could not receive a fair grievance hearing because of SHA's policies.  Khadija Bin contended that SHA improperly refused to translate grievance-related documents for her, and had also improperly resolved a grievance related to the proper calculation of her rent.

Litigation on the merits of these claims focused on a preliminary injunction motion and three cross-motions for summary judgment.  Plaintiffs' preliminary injunction targeted only SHA's grievance policies, and focused largely on SHA's use of Lawrence Weldon (through his company, Weldon Mediation Services) to preside over virtually all grievance hearings.  Plaintiffs filed their motion for an injunction on August 18, 2010, and the parties completed briefing by October 1, 2010.  In February 2011, the court entered an order declining to issue an injunction except in one respect: it enjoined SHA from continuing its policy barring grievance officers from resolving tenants' legal arguments, and enjoined SHA from using hearing officers who were not trained to resolve legal arguments.  It rejected Plaintiffs' contentions that they were likely to succeed in proving that Mr. Weldon was biased or incompetent.  The court also rejected the contention that Mr. Weldon should be disqualified because SHA did not follow a law requiring it to consult with resident organizations before selecting hearing officers.  The

ORDER – 2

court acknowledged that SHA had likely failed to follow the law requiring consultation, but declined to order an injunctive remedy.

The parties filed three prolix cross-motions for summary judgment, generating more than 200 pages of briefing in February and March 2012.

Before the court could resolve the summary judgment motions, the parties reached an agreement to resolve many of their claims. By May 2012, they had dismissed all claims related to the Tenant Trust Account program as well as the individual claims of Ms. Ann, Mr. Shepherd, and Mr. Ngauja. What remained were the parties' disputes regarding SHA's grievance policies, their disputes about its document translation policies, and Ms. Bin's individual dispute.

In September 2012, the court revealed its likely disposition of the remaining issues in the summary judgment motions. The parties appeared at oral argument in October to address that disposition. On October 31, the court entered an order resolving the summary judgment motions, which (by agreement of the parties) left no issues remaining for trial. The court awarded Plaintiffs no relief on their claims arising from SHA's document translation policies. As to Ms. Bin's dispute, the court barred SHA from seeking back rent from any period prior to February 2010. Finally, the court granted in part and denied in part the grievance-policy summary judgment motions. It rejected arguments that grievance hearing officers had the power or authority to second guess the discretionary determinations of SHA property manager, that SHA was obligated to give tenants subpoena-like powers to compel testimony and the production of documents in connection with grievance hearings, and that the court should appoint a special master to review SHA's past grievance decisions. The court entered a permanent injunction requiring SHA to consider legal arguments at grievance hearings, appoint hearing officers capable of resolving those arguments, develop rules to permit hearing officers to address

ORDER – 3

disputed requests for continuances of grievance hearings, and to develop rules governing consultation with resident organizations when choosing grievance hearing officers.

The court chronicles Plaintiffs' successes and failures in some detail because they are at the heart of the most significant disputes with respect to Plaintiffs' motion for attorney fees. Plaintiffs contend that their attorneys expended more than 2000 hours in this litigation, and that more they expended more than 700 of those hours on claims on which they were successful. SHA contends that Plaintiffs have overestimated their success, and that they expended too many hours even on their successful claims.

The court now turns to Plaintiffs' motion for attorney fees, keeping in mind that it has "a great deal of discretion" in determining a fee award. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1993).

## III.   ANALYSIS

No one disputes that Ms. Bin and RAC are entitled to attorney fees on those claims on which they prevailed. The RAC, which seeks fees for its successful challenge to SHA's grievance policies, invokes 42 U.S.C. § 1988, which permits a prevailing party in a suit invoking (among other statutes) 42 U.S.C. § 1983 to recover a "reasonable attorney's fee . . . ." Ms. Bin's lease entitles her to recover her reasonable attorney fees.

The parties also agree on the legal framework for determining an attorney fee award. The "most useful starting point for determining the amount of a reasonable [attorney] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). This "lodestar" amount is a presumptively reasonable fee, although the court may adjust it upward or downward after considering various factors. *Camacho*, 523 F.3d at 978. In this case, no one has requested an upward or downward departure from the lodestar amount. Instead, the parties dispute the appropriate lodestar.

ORDER – 4

A party who brings multiple claims is entitled to attorney fees only for those claims on which she prevails. *Hensley*, 461 U.S. at 434-36 (discussing effect of partial success on fee petition). Where a party invokes different legal theories to reach a result based on the same set of facts, the court should not reduce attorney fees merely because some legal theories were not successful. *Id.* at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). But where a party succeeds on some claims but fails on "distinctly different claims for relief that are based on different facts and legal theories," the court cannot award fees expended in pursuit of the failed claim. *Id.* at 434-35. The court must also compensate the prevailing party for time that is "devoted generally to the litigation as a whole" and is "difficult to divide . . . on a claim-by-claim basis." *Id.* at 435.

Plaintiffs purport to have already excluded the time their attorneys expended on the Tenant Trust Account claims, the document translation claims, the Earned Income Disallowance claims, and the individual claims of Ms. Ann, Mr. Shepherd, and Ms. Ngauja. What remained was, roughly speaking, a request for about $185,000 in fees based on about 770 hours of attorney time. SHA contended that the court should award no more than about $73,000. In conjunction with their reply brief, Plaintiffs reduced their request to about $166,000.

Plaintiffs' counsel's approach to fee calculation is as follows. Three attorneys submitted declarations, dividing their time into three categories: time spent pursuing the grievance-policy claims, time spent pursuing Ms. Bin's claim, and time that counsel attributes to the litigation as a whole. Counsel requests full compensation (at rates ranging between $275 and $300 per hour) for their time on Ms. Bin's claim and the grievance-policy claims. As to the time spent on the litigation as a whole, they reason that because they prevailed on about half of their claims, they should recover fees for half

ORDER – 5

of the hours they expended on the litigation as a whole.  SHA does not object to counsel's approach, but contends that the figures counsel reached are inflated for a variety of reasons.  The court, like the parties, focuses on whether the hours expended were reasonable and the extent to which Plaintiffs succeeded on their claims.

A.      **Fees for Grievance-Policy Claims**

The court begins with what accounts for the majority of Plaintiffs' fee request: time spent pursuing grievance-policy claims.  As noted, Plaintiffs prevailed on significant aspects of those claims, particularly with respect to ending SHA's practice of refusing to consider tenants' legal arguments.  They also were unsuccessful on significant aspects of those claims, including their attempt to prove that the SHA's primary hearing officer was biased or incompetent.  Smaller (in terms of the complexity of the issues) victories on SHA's policies for hearing continuances and consultation with resident organizations were offset by losses in their efforts to require hearing officers to second-guess SHA's discretionary decisions and to create a subpoena-like set of procedures for tenants in grievance hearings.  Although these facets of Plaintiffs' grievance-policy claims no doubt had some factual overlap, they were largely distinct.  In these circumstances, it is not reasonable for Plaintiffs to claim to have fully prevailed on their grievance-policy claims, and it is not reasonable that they receive fees for all of the time their attorneys expended on them.  Moreover, the court notes that a single attorney spent about 80 hours drafting the preliminary injunction motion alone, then another 80 hours drafting the grievance-policy summary judgment motion.  The court acknowledges that the summary judgment motion presented many issues that Plaintiffs did not raise in their request for injunctive relief.  Nonetheless, 160 hours for two standard-length briefs is an exorbitant investment of time.  It would not be reasonable to permit Plaintiffs to recover for all of it.

With those considerations in mind, the court will award fees for 50% of the time counsel expended on the grievance-policy claims.  That accounts both for the partial

ORDER – 6

success on those claims and the excessive time spent pursuing them.  One attorney with a

$300 hourly rate[1] expended about 231 hours on those claims, and another attorney with a

$275 hourly rate expended 127 hours.  Applying the 50% reduction, the court awards

$52,112.50 in attorney fees for the grievance-policy claims.

**B.    Fees for Ms. Bin's Claim**

Ms. Bin's claim, at least at the outset of the litigation, was a hybrid.  Her primary

language is Somali, and part of her individual claim was devoted to a challenge to SHA's

failure to provide Somali translations of documents related to her grievance.  The other

aspect of her claim was related to the interpretation of a decision in a grievance hearing

as it applied to SHA's ongoing efforts to collect back rent from her.  She met with no

success on her document translation claims, but was entirely successful in establishing

that she owed no back rent.  Nonetheless, as all parties acknowledge, the portion of

Plaintiffs' summary judgment motion dedicated to her rent dispute was three pages long.

Although Plaintiffs' counsel attempted to take deductions to recognize the limited extent

of her rent dispute, they nonetheless request compensation for more than 150 hours of

time spent on her dispute.  One attorney spent more than 30 hours preparing for oral

argument.  No one mentioned Ms. Bin's claim at oral argument.  Even assuming that it

was necessary for counsel to prepare for oral argument on Ms. Bin's claim in case SHA

brought it up, 30 hours is plainly excessive.  In addition, Plaintiffs have not adequately

responded to SHA's claim that the majority of the hours spent preparing and responding

to discovery requests on her behalf were hours devoted to addressing her document-

translation claim.

---

[1] SHA did not directly challenge the reasonableness of counsel's hourly rates, instead focusing its attention on whether attorneys with the skill and experience implicit in those rates would have billed as many hours as these attorneys did.  The court may rely on its own familiarity with legal rates in the local market, and it does so in concluding that Plaintiffs' counsel's hourly rates are reasonable.  *See Camacho*, 523 F.3d at 979 ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (noting that court may rely on its own knowledge and experience regarding fees charged in the area in which it presides).

ORDER – 7

In light of these considerations, the court will award Plaintiffs only 40% of the hours their counsel expended pursuing Ms. Bin's claim. This accounts both for Ms. Bin's partial success and for the excessive hours counsel spent pursuing the claim. Two attorneys with a $275 hourly rate expended about 138 hours on Ms. Bin's claim. Plaintiffs properly withdrew their claim for the time of a third attorney, who expended only 13 hours. Applying the 40% reduction, the court awards $15,180 in attorney fees for Ms. Bin's claim.

C.      **Fees for Time Expended on the Litigation as a Whole**

Plaintiffs contend that because they prevailed on about half of their claims, about half of the time their attorneys expended on the litigation as a whole is compensable. Estimating the degree of success in a multifaceted litigation like this one is a matter of judgment informed by experience in litigation, not a mathematical exercise. Although Plaintiffs' conclusion that they were 50% successful is not compelling, neither is SHA's 17% estimate, based on a tally of 23 categories of relief, of which Plaintiffs pursued only 4 successfully. In the court's judgment, the grievance-policy claims were the most labor-intensive aspect of this litigation, with the document translation and TTA claims taking less time. The individual claims, excepting Ms. Bin's unpaid rent claim, were in some ways subsidiaries of the three categories listed above. Accounting for the dominance of the grievance-policy claims, Plaintiffs' partial success on those claims, the remaining claims, and Plaintiffs' success only as to Ms. Bin's rent claim, the court concludes that 30% of the time Plaintiffs' counsel expended on the litigation as a whole is reasonably compensable.

With those considerations in mind, the court awards the following fees attributable to the litigation as a whole. One attorney with a $300 hourly rate expended 220 hours on those claims, and two attorneys with $275 hourly rates expended 51 hours. Applying the

ORDER – 8

30% reduction, the court awards $24,007.50 in attorney fees attributable to the litigation as a whole.

Adding the three categories of attorney time together, the court awards total attorney fees of $91,200.00.

Before concluding, the court notes that Plaintiffs also filed a motion for costs, in which they ultimately requested costs of just over $5,400. Although the cost motion is pending for determination by the clerk of court, the court notes for the clerk's benefit that it has reviewed the costs motion and finds that Plaintiffs' partial success is not a basis to reduce the costs that they claimed. The court finds no reason for the clerk to depart from its typical practices in assessing Plaintiffs' costs bill.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' motion for attorney fees (Dkt. # 171), but awards less than Plaintiffs requested. SHA shall pay Plaintiffs their attorney fees in the amount of $91,200.00.

DATED this 22nd day of March, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9